William L. **FUQUA**, Plaintiff-Appellant,

v.

The **TRAVELERS INSURANCE COMPANY**, Defendant-Appellee.

No. 82–7360.

United States Court of Appeals, Eleventh Circuit.

June 18, 1984.

Joseph M. Brown, Jr., Gregory B. Breedlove, Mobile, Ala., for plaintiff-appellant.

Charles J. Fleming, M. Kathleen Miller, Mobile, Ala., for defendant-appellee.

Before GODBOLD, Chief Judge, and RONEY and SMITH *, Circuit Judges.

EDWARD S. SMITH, Circuit Judge:

In this insurance contract case, appellant William L. Fuqua (Fuqua) appeals from a judgment of the United States District Court for the Southern District of Alabama, holding that he is not entitled to recover from appellee, The Travelers Insurance Company (Travelers), in excess of the limits of liability under his employer's policy. We affirm.

*Issues*

The principal question presented in this appeal is whether Fuqua is entitled to "stack" the uninsured motorist coverage of all of the automobiles covered under his employer's policy of insurance, where Fuqua had been assigned for his business and personal use one of the automobiles insured under that policy. In view of the recent evolution of Alabama law on the issue of "stacking" uninsured motorist coverage, Fuqua requests that we certify the question to the Alabama Supreme Court for ultimate resolution.

*Background*

Fuqua was employed as a new car salesman by Joe Bullard Oldsmobile, Inc. (Joe Bullard), and had a "dealer plate" automobile assigned to him. The car was one of 27 "dealer plate" automobiles owned by Joe Bullard and insured by Travelers under a comprehensive policy of insurance covering the period from January 16, 1978, to January 16, 1979. Under that policy, Joe Bullard paid an annual premium of $6 per vehicle for uninsured motorist coverage. Joe Bullard is the named insured and the

designated insured under that policy. Fuqua is neither.

The "Uninsured Motorists Insurance Endorsement" of Joe Bullard's policy defines the persons insured as follows:

Each of the following is an *Insured* under this insurance to the extent set forth below:

1. The *Named Insured* and any *Designated Insured* and, while residents of the same household, the spouse and relatives of either;

2. any other person while *occupying* an *insured highway vehicle;* and

3. any person, with respect to damages he is entitled to recover because of *bodily injury* to which this insurance applies sustained by an *Insured* under 1. or 2. above.

The insurance applies separately with respect to each *Insured,* except with respect to the limits of The Travelers' liability. [Emphasis in original.]

Travelers' liability under the uninsured motorists endorsement is limited as follows:

Regardless of the number of (1) persons or organizations who are insureds under this policy, (2) persons who sustain *bodily injury,* (3) claims made or suits brought on account of *bodily injury,* or (4) *highway vehicles* to which this policy applies:

1. The limit of liability stated in the declarations as applicable to "each person" is the limit of The Travelers' liability for all damages because of *bodily injury* sustained by one person as the result of any one accident and, subject to the above provision respecting "each person", the limit of liability stated in the declarations as applicable to "each accident" is the total limit of The Travelers' liability for all damages because of *bodily injury* sustained by two or more persons as the result of any one accident. [Emphasis in original.]

The applicable declarations limit Travelers' liability to $10,000 for each person and

---

* Honorable Edward S. Smith, U.S. Circuit Judge for the Federal Circuit, sitting by designation.

$20,000 for each occurrence for bodily injury.

On or about October 20, 1978, Fuqua and his wife were involved in an automobile accident with an uninsured motorist. The uninsured motorist crossed the median strip and struck "head on" the car driven by Fuqua. The policy was in effect and the automobile driven by Fuqua at the time of the accident was one of Joe Bullard's 27 "dealer plate" cars covered under the Travelers policy. Mr. and Mrs. Fuqua each received $10,000 from Travelers under the policy.

Fuqua filed an action in the Circuit Court of Mobile County against Travelers claiming that he was entitled to "stack" the coverage afforded for each of the 27 "dealer plate" cars and, hence, recover in excess of the limits of liability under the policy. On Travelers' motion, the case was removed to the United States District Court for the Southern District of Alabama, where jurisdiction was based on diversity of citizenship. The case was assigned to a magistrate who recommended that Travelers' motion for summary judgment be denied. The district court, however, granted Travelers' summary judgment motion holding that, under Alabama law, Fuqua was not entitled to "stack" the uninsured motorist coverage for all of the "dealer plate" cars under the policy. Fuqua appeals.

## Uninsured Motorist Coverage

In some situations, an insured is allowed to recover under an uninsured motorist provision in excess of the limits of liability under an insurance contract by "stacking" the coverage available for other vehicles under the policy. Recovery has been allowed under the theory that "Limits of Liability" clauses are ineffective to prevent "stacking," being in derogation of the Alabama Uninsured Motorist statute. *General Mutual Insurance Co. v. Gilmore*, 294 Ala. 546, 319 So.2d 675, 676 (1975). That statute has been generally construed to require that the scope of coverage of all classes of insureds is identical and equal. *Id.* at 678; *State Farm Automobile Insurance Co. v. Reaves*, 292 Ala. 218, 292 So.2d 95 (1974).

Since the named insured is accorded the same coverage by each of the premiums paid for the uninsured motorist provision under a policy covering more than one automobile, the named insured's reasonable expectation of coverage is satisfied by allowing the named insured to "stack."

## Alabama Supreme Court Cases

In *Gilmore*, the executrix sought to recover in excess of the limits of liability under the uninsured motorist provision of the policy by "stacking." The insurance company stipulated that, while Gilmore was not a named insured under the policy, he was "an insured * * * in that he was an employee" of the named insured. *Gilmore*, 319 So.2d at 677. That stipulation was considered to accord Gilmore the status of "insured" under the standard omnibus clause of the policy. The court declined to consider distinctions urged by General Mutual between different classes of insureds:

> [T]he validity vel non of General Mutual's *contention that the distinction between the various classes of omnibus insureds requires different results as to "stacking" is not before us.* Judicial restraint requires that we await the appropriate case to address the issue whether "stacking" is permissible where the injured plaintiff is an insured by virtue of his occupancy of the insured vehicle. [Footnote omitted. Emphasis supplied.]

*Id.* *Reaves* was cited by the court in *Gilmore* as refusing to recognize distinctions between the named insured and other persons insured under the policy for purposes of scope of coverage. The court considered Gilmore to be a third party beneficiary to the insurance contract and he was held to be entitled to its full benefits.

The Alabama Supreme Court quickly came to terms with the issue reserved in *Gilmore*. In *Lambert v. Liberty Mutual Insurance Co.*, 331 So.2d 260 (Ala.1976), the court held that there are distinctions

between various classes of omnibus insureds. Lambert was riding as a passenger in a vehicle insured under his employer's fleet policy when that vehicle collided with another vehicle driven by an uninsured motorist. The court concluded that Lambert, who was not the "named insured" and who had paid no premiums but who was an insured solely by virtue of his occupancy, was not entitled to "stack" coverages under the policy. The court identified two classes of insureds: (1) insureds of the first class, who are entitled to stack; and (2) insureds of the second class, who are not. The Alabama Supreme Court stated:

We agree with the Virginia Supreme Court[1] that the rationale upon which stacking under multi-vehicle policies has been justified for insureds of the first class is inapplicable to insureds of the second class. Although an insured of the first class is covered under uninsured motorist policy provisions in whatever vehicle he may be occupying, an insured of the second class is similarly covered only if the particular vehicle he occupies is specifically included under the coverage of some policy. Thus, the payment of an additional premium to cover additional vehicles obtains a substantial benefit insofar as insureds of the second class are concerned. Not being a party to the contract, the expectations of an insured of the second class as to the extent of his coverage do not result in contract ambiguity and are not sufficient to avoid the effect of the policy's limiting clause.

*Id.* at 677. Further, the court distinguished *Reaves* as construing the validity of an exclusion from coverage in the policy, whereas the "stacking" question involves limitations on the recovery of an insured who is covered.

Subsequently, in *Billups v. Alabama Farm Bureau Mutual Casualty Insurance Co.*, 352 So.2d 1097 (Ala.1977), and in

*Holloway v. Nationwide Mutual Insurance Co.*, 376 So.2d 690 (Ala.1979), the Alabama Supreme Court adhered to its reasoning in *Lambert*. In *Billups*, 352 So.2d at 1104, the court stated that

[a]n insured of the first class, consisting of the named insured and any relative, is entitled to stack coverages. An insured of the second class, consisting of permissive users of the vehicle and any occupants, is not so entitled. This classification is consistent with reasonable expectations of the parties to the contract, the named insured and the insurance company. In *Lambert*, we expressly declined to extend to permissive users of automobiles the privilege of stacking multi-vehicle coverage under policies not owned by them. We adhere to that decision and find that it controls in this instance.

In *Holloway*, the court reversed a grant of summary judgment. The court considered the "stacking" issue central to the case and expressly declined to follow *Gilmore:*

We do not consider the opinion in *Gilmore* to be controlling. Therefore, absent reformation of the policy, the cases of *Lambert v. Liberty Mutual Insurance Company*, 331 So.2d 260 (Ala.1976), and *Billups v. Ala. Farm Bur. Mut. Cas. Ins. Co.*, 352 So.2d 1097 (Ala.1977), clearly indicate that stacking is not permitted in this instance.

*Holloway*, 376 So.2d at 693. The court went on to elaborate that

[a]ccording to the decisions, certain insureds are entitled to uninsured motorist coverage independently of any occupancy or use on their part of a vehicle insured under the policy. These insureds are known as "insureds of the first class." Under the present policy, such insureds hypothetically include (1) the named insured, (2) a designated insured, (3) a spouse or relative of either the named insured or a designated insured, and (4) a

---

1. *See Cunningham v. Insurance Co. of North America*, 213 Va. 72, 189 S.E.2d 832, 836 (1972) ("The named insured in a policy receives coverage, and a contract benefit, for which he has paid a consideration. He seeks indemnity

based on the payment of that premium and where he has paid separate premiums he is entitled to the additional coverages. However, this argument and reasoning does not apply to a permissive user of a vehicle * * *.").

partner or executive officer of the named insured.

\* \* \* \* \* \*

These same cases recognize a second group of insureds. These are insureds of the second class and include mere occupants of the vehicle and also permissive users covered under the omnibus liability clause. These persons are *entitled* to uninsured motorist coverage *solely because of their occupancy or use of an insured vehicle.* Therefore, their right to coverage is necessarily tied to and limited by the coverage applicable to such vehicle and as governed by the policy's limits of liability clause.

*Id.* at 694 (emphasis supplied). The court also referred to its earlier reliance in *Lambert* on the Virginia Supreme Court's reasoning in *Cunningham*[2] and to its own earlier statements in *Billups* that permissive users and any occupants of a vehicle are not entitled to "stack."

### Certification

Fuqua argues that, due to the complexity of the issue and the confusion of Alabama law, this question should be certified to the Alabama Supreme Court. We disagree.

While the Alabama Supreme Court has not expressly overruled *Gilmore*, it expressly declined to follow *Gilmore* in *Holloway* and rejected the reasoning applied in *Gilmore* in both *Lambert* and *Billups*. The trial judge, in his well-reasoned opinion in this case, concluded that *Gilmore* has been implicitly overruled and we agree with that conclusion.

Further, even were we to assume that *Gilmore* is still valid precedent, the issue before us was expressly reserved in *Gilmore*, 319 So.2d at 677.

The Court of Civil Appeals of Alabama, while noting the difficulty of reconciling precedent on the "stacking" issue, has not been confused by *Gilmore*. In *Nationwide Mutual Insurance Co. v. United Services Automobile Association*, 359 So.2d 380, 382–833 (Ala.Civ.App.1978), the Court

of Civil Appeals held that *Gilmore* was not controlling and noted that the case had been ignored by the high court in subsequent decisions on "stacking." Certification would serve no useful purpose in this case.

### Stacking

Fuqua contends that he is not an insured *merely* because of his occupancy or permissive use of the automobile. While he admittedly is not a named insured, Fuqua asserts that, as a "contemplated" insured, he is entitled to "stack." Fuqua views the assignment to him by Joe Bullard of one of the insured vehicles as placing him among the insureds of the first class under *Lambert* and *Holloway*. Travelers properly counters that, under Alabama law, whether an insured is a contemplated insured is not dispositive of the "stacking" issue.

*Gilmore* is not controlling. Further, we decline to follow Fuqua's contemplated insured line of reasoning. Fuqua identifies no support for that argument in Alabama law. We must determine whether Fuqua is an insured of the first class or an insured of the second class under *Lambert* and *Holloway*.

As noted above, Fuqua is neither the named nor the designated insured, nor is he an executive officer of Joe Bullard. Further, he is not a resident of the same household, the spouse, or a relative of any of the above. Fuqua has paid no premiums under the policy. He was assigned the automobile by his employer. While he may well be a contemplated insured, that characteristic fails to distinguish him from an occupant or a permissive user of the vehicle.

We conclude that this case is controlled by *Nationwide*. The insured in *Nationwide* was injured while driving an automobile leased by the employer and furnished to him by his employer for his use while on company business and for his personal use. The Court of Civil Appeals held that the employee's use was permissive and the em-

**2.** *Supra* note 1.

ployee was, therefore, not entitled to "stack." The slight factual distinctions in this case are without significance. That Fuqua was a full-time employee, and that he was driving a vehicle owned, and assigned to him, by Joe Bullard, does not alter his status as an insured of the second class. The trial court did not err in concluding that Fuqua is not entitled to "stack." Hence, Travelers has no further liability to Fuqua in this case.

AFFIRMED.