331 So.2d 260 (1976)
Edwin E. LAMBERT
v.
LIBERTY MUTUAL INSURANCE COMPANY, a corp. and St. Paul Insurance Co., a corp.
SC 1255.
Supreme Court of Alabama.
March 26, 1976.
Rehearing Denied May 7, 1976.
*261 Hare, Wynn, Newell & Newton and James J. Thompson, Jr., Birmingham, for appellant.
Lyman H. Harris, Birmingham, for appellee, Liberty Mut. Ins. Co.
BLOODWORTH, Justice.
This is an appeal from a summary judgment in which it was held that appellant Lambert, an employee of Seaboard Coast Line Railroad and an "insured" under the uninsured motorist coverage provided by Seaboard's "fleet" insurance policy with Liberty Mutual, cannot "stack" Seaboard's coverages on any vehicle other than the one in which he was riding at the time of his accident.
On February 7, 1973, appellant Lambert (plaintiff below) was injured while riding as a passenger in a vehicle owned by Seaboard which collided with a vehicle driven by an uninsured motorist.
Appellee Liberty Mutual insured Seaboard's entire fleet of 1,699 vehicles under one policy. Since the vehicles are located in several states, the insurance policy contains different endorsements to provide coverage in accordance with the requirements of the different states. Approximately fifty of the vehicles are principally garaged in Alabama. The policy requires a separate premium of $4.00 for each vehicle for the uninsured motorist coverage and sets policy limits of $10,000 per vehicle for each person injured. Although Seaboard is the "named insured" under this policy, Lambert is also an "insured"for purposes of uninsured motorist coverage by virtue of his occupancy of an insured vehicle, because the uninsured motorist provisions of the policy define "insured" to include any other person while occupying an insured highway vehicle; . . ."
Lambert is the "named insured" in a policy of insurance issued to him by St. Paul Insurance Company which provided uninsured motorist coverage on Lambert's two personally owned vehicles, with limits of $20,000.
Lambert entered suit against both insurers claiming $1,000,000 in uninsured motorist coverage by seeking to "stack":
(1) $20,000 under the St. Paul policy;
(2) $10,000 under the Seaboard policy issued by Liberty Mutual for the vehicle in which Lambert was riding as a passenger; and,
(3) the maximum of Seaboard's coverage under Liberty Mutual's policy on all of Seaboard's vehicles in all states.
The trial judge granted Liberty Mutual's motion for summary judgment by:
(1) rendering judgment for $19,000 under the St. Paul policy (reduction of $1,000 from policy limits was by agreement);
(2) rendering judgment for $10,000 under Seaboard's policy with Liberty Mutual for the vehicle in which Lambert was riding as a passenger; and,
(3) denying judgment to Lambert under the policy with Liberty Mutual on all the other Seaboard vehicles.
*262 It is from the third portion [(3)] of the summary judgment that appellant Lambert appeals. No question is raised on this appeal as to the other two portions of the judgment.
Consequently, the issue is whether Lambert, who is not the "named insured" and who has not paid any premium but who is an "insured" solely by virtue of his occupancy, is entitled to "stack" coverages under the Seaboard-Liberty Mutual policy on all Seaboard's vehicles. We hold that he is not and affirm the judgment of the trial judge.
Lambert contends that there is no difference between a "fleet" or "commercial" policy and a "family combination automobile" policy insofar as "stacking" is concerned under uninsured motorist coverage. Therefore, since this Court has held "stacking" is permitted under the "family combination automobile" policy, he contends, we ought to extend the doctrine to "fleet" policies as well. In support of his contention, Lambert cites: State Farm Automobile Ins. Co. v. Reaves, 292 Ala. 218, 292 So.2d 95 (1974); Employers Liab. Assurance Corp. v. Jackson, 289 Ala. 673, 270 So.2d 806 (1972); State Farm Mutual Automobile Ins. Co. v. Cahoon, 287 Ala. 462, 252 So.2d 619 (1971); Safeco Ins. Co. of America v. Jones, 286 Ala. 606, 243 So.2d 736 (1970).
Liberty Mutual, on the other hand, contends that in none of these cases are we presented with the precise issue in this case. Liberty Mutual cites two cases which have directly considered this issue: Cunningham v. Ins. Co. of North America, 213 Va. 72, 189 S.E.2d 832 (1972), and Witcher v. Travelers Indemn. Co., Civil Action No. 73-1023, (N.D.Ala., Sept. 10, 1974) (Lynne, J., unreported). Both cases denied passengers (who were "insureds" by virtue of permissive occupancy) the right to "stack" under fleet policies. Liberty Mutual adds that Lambert has cited no precedent in point for the proposal he espouses. Liberty Mutual states that, after extensive research, it has not found any case in any jurisdiction which permits stacking under a commercial or fleet policy of insurance covering fleet vehicles when they were not being occupied by the named insured at the time of his accident.
Moreover, Liberty Mutual contends that it should not be liable for more than $10,000 under the fleet policy because Lambert was occupying only the one vehicle as a passenger at the time of the accident, and because the premium was paid by the employer Seaboard, not by Lambert.
Our previous Alabama cases allowing stacking have fallen generally into two separate categories.
This Court first allowed stacking in a case in which the insured-passenger sought to stack coverage under his own personal uninsured motorist policy onto coverage under a policy owned by the driver. In Safeco Ins. Co. of America v. Jones, 286 Ala. 606, 243 So.2d 736 (1970), this Court held that the passenger, who was injured in a collision with an uninsured motorist, was not only entitled to coverage under his own uninsured motorist policy but was also entitled to coverage under the driver's policy.
Under the second category of cases in which this Court has permitted stacking, the injured party seeks to stack coverages under separate uninsured motorist coverages on multiple vehicles insured under one policy which lists him as the named insured. In Employers Liab. Assurance Corp. v. Jackson, 289 Ala. 673, 270 So.2d 806 (1972), the doctrine of stacking coverages was extended to cover this second category of cases. Under the rule set out in Jackson, the insured is permitted to stack benefits under the uninsured motorist provisions of his personal policy where he has paid separate premiums for each vehicle insured under one multivehicle policy.
Now, by this appeal, Lambert urges this Court to extend the concept of stacking to cases falling in a third factual category.
*263 Lambert contends that an injured insured should be allowed to stack coverages on multiple vehicles insured under one policy where the policy in question has been purchased and is owned by another party, that party being the named insured. This contention presents a question of first impression in Alabama. However, in at least two cases the United States District Court for the Northern District of Alabama has been presented with this issue. That court held in both cases that it would not extend the doctrine of stacking to cover cases falling under this third category. See Long v. United States Fidelity and Guar. Co., 396 F.Supp. 966 (N.D.Ala. 1975) (Lynne, J.); Witcher v. Travelers Indemn. Co., Civil Action No. 73-1023 (N.D.Ala., Sept. 10, 1974) (Lynne, J., unreported.)
The rationale underlying the doctrine of stacking as it has evolved in Alabama has been recently articulated by this Court in Great Cent. Ins. Co. v. Edge, 292 Ala. 613, 298 So.2d 607 (1974). In that case, a named insured, while a pedestrian, was struck and injured by an uninsured motorist. He was allowed to stack coverages on several vehicles insured under the same policy even though the policy included a limiting clause which arguably prohibited such recovery. In the language of that opinion, "the law of this state with respect to uninsured motorist coverage precludes an insurer from collecting a premium for certain coverage, then taking that coverage away by a limiting clause, under the rationale that a contrary holding would be in violation of the uninsured motorist insurance statute." Id. at 616, 298 So.2d at 609. The Court added that its opinion in Jackson "focused on the real issue, that being the fact that the insured had paid two premiumsthat in effect the [insureds] had purchased two policies of insurance on one form and that the public policy expressed in the uninsured motorists' insurance statute prevented the insurance company from limiting its liability under such circumstances." Id. at 617, 298 So.2d at 610.
I.
Not only may these stacking cases be analyzed in terms of their statutory underpinnings, they may also be analyzed as a further application of the established rule in Alabama that "the insured is entitled to the protection which he may reasonably expect from the terms of the policy he purchases." Aetna Cas. & Sur. Co. v. Chapman, 240 Ala. 599, 602, 200 So. 425, 427 (1941) (emphasis added).
As Professor Keeton analyzes it, the principle of reasonable expectations insures that "[t]he objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." R. Keeton, Basic Text on Insurance Law § 6.3(a), at 351 (1971).
By permitting the insured to stack his coverages, this Court has simply honored the reasonable expectation of the "named insured" that his payment of an additional premium will result in increased coverage for those falling within the definition of the "named insured," and where an expectation of this nature is in conflict with a limiting clause in the policy, the resulting ambiguity must be resolved in favor of the insured due to the nature of insurance contracts. See generally Note, Insurance-Stacking-Multiple Recovery Permitted under Single Policy Insuring More Than One Vehicle, 7 U.Rich.L.Rev. 385 (1972). As explained by Professor Keeton, "[i]nsurance contracts continue to be contracts of adhesion under which the insured is left little choice beyond electing among standardized provisions offered to him. . .." R. Keeton, Basic Text on Insurance Law § 6.3(a), at 350 (1971). Recognition of this circumstance is at least an implied element in this Court's opinions *264 in cases such as Edge and Jackson. Such recognition is implicit in language such as the following statement: "the [insurer] should pay in two instances because the insured had paid a premium in two instances for uninsured motorist coverage." Employers Liab. Assurance Co. v. Jackson, 289 Ala. at 679, 270 So.2d at 810.
However, what may be a reasonable expectation for the purchaser and "named insured" under a policy may not necessarily be so for an insured such as Lambert who has become an insured by virtue of his riding as a passenger in an insured vehicle. Differences between the coverages provided for these two classes of insureds are quite significant as has been pointed out by the Kansas Supreme Court in Sturdy v. Allied Mut. Ins. Co., 203 Kan. 783, 791, 457 P.2d 34, 40 (1969):
"[T]he policy . . . defines two separate classes of persons as being `insured' under it: First, the named insured (and any relative); and second, any other person while occupying an insured automobile. To be insured, the latter must actually be occupants of an insured vehicle. Their coverage is tied to and limited to actual occupancy of a particular automobile. This is not true of the named insured. His coverage. . . is not tied to or limited by occupancy of an automobile. . . .
"Thus we see that the policy provides the named insured with two kinds of coverage: While he is in his insured automobile, and wherever else he may happen to be when he suffers bodily injury due to an uninsured motorist. This latter constitutes a broad reservoir of coverage."
If an insured of the first class [i.e., "named insured"] is already covered under all circumstances against the risk of uninsured motorist injuries, what additional personal coverage will he acquire by the payment of an additional premium for coverage on a second vehicle? The answer is that were it not for the privilege of stacking, no additional personal coverage would be afforded the "named insured" in exchange for his additional premium.
The Supreme Court of Virginia in considering the precise issue presently before this Court also recognized this circumstance as evidenced by the following language:
"The named insured in a policy receives coverage, and a contract benefit, for which he has paid a consideration. He seeks indemnity based on the payment of that premium and where he has paid separate premiums he is entitled to the additional coverages. However, this argument and reasoning does not apply to a permissive user of a vehicle . . ."
Cunningham v. Ins. Co. of North America, 213 Va. 72, 77, 189 S.E.2d 832, 836 (1972). The well reasoned opinion in Cunningham, authored by Justice Harrison, has been expressly adopted by several other courts which have considered this same issue. E.g., Long v. United States Fidelity and Guar. Co., 396 F.Supp. 966, 969-70 (N.D. Ala.1975) (Referring to the above-quoted excerpt from Cunningham, Judge Lynne wrote, "This reasoning is sound." 396 F. Supp. at 970); Moomaw v. State Farm Mut. Auto. Ins. Co., 379 F.Supp. 697, 703 (S.D.W.Va.1974).
We agree with the Virginia Supreme Court that the rationale upon which stacking under multi-vehicle policies has been justified for insureds of the first class is inapplicable to insureds of the second class. Although an insured of the first class is covered under uninsured motorist policy provisions in whatever vehicle he may be occupying, an insured of the second class is similarly covered only if the particular vehicle he occupies is specifically included under the coverage of some policy. Thus, the payment of an additional premium to cover additional vehicles obtains a substantial benefit insofar as insureds of the second class are concerned. Not being a party to the contract, *265 the expectations of an insured of the second class as to the extent of his coverage do not result in contract ambiguity and are not sufficient to avoid the effect of the policy's limiting clause.
Can it be seriously contended that Seaboard expected that the $4.00 premium it paid for uninsured motorist coverage on each of its 1,699 vehicles would purchase coverage for all permissive occupants of its vehicles to the tune of $16,900,000? Clearly, such an expectation would not have been a reasonable one under the terms of the commercial fleet policy here in question. The status of Lambert (for purposes of uninsured motorist coverage) as an insured solely by virtue of his occupancy of the vehicle, is clearly distinguishable from the status of a named insured who is entitled to stack coverages by virtue of his personal payment of an additional premium for each vehicle insured under a multi-vehicle policy.
For the reasons given, we decline to extend the privilege of stacking to insureds of the second class. In so ruling we thereby affirm the decision of the trial court.
II.
In State Farm Automobile Insurance Co. v. Reaves, 292 Ala. 218, 292 So.2d 95 (1974), we construed our uninsured motorist statute as mandating uninsured motorist coverage for all "persons insured thereunder" under the automobile liability policy. We held that because a brother and mother of a policyholder were "insureds" under the omnibus clause of the liability policy they must also be covered under uninsured motorist provisions and therefore they would not fall under an "exclusion" for injury suffered while occupying a vehicle owned by the "named insured" or any member of the same household and not covered under the policy.
There, we were dealing with an "exclusion" from uninsured motorist coverage; here, we are dealing with a limitation as to the amount of coverage to be afforded a passenger who is conceded by both sides to be an "insured" under the omnibus clause of uninsured motorist coverage. It was "coverage" there and "stacking" here.
We see no conflict with the result we reach here and in Reaves. This "insured" is simply not a "person insured thereunder" so that coverage is mandated for him under the statute, as we held in Reaves. The plain terms of the policy limit the amount of coverage provided for this "insured." There is no conflict between the statute, or Reaves, and this provision.
AFFIRMED.
MERRILL, FAULKNER, ALMON, and EMBRY, JJ., concur.
JONES and SHORES, JJ., concur in Part II.
MADDOX, J., concurs specially.
HEFLIN, C.J., concurs in the result.
MADDOX, Justice (Concurring specially).
I concur in Part II of the opinion insofar as it holds that Lambert was not a "person insured thereunder," as those words have been construed by this Court.
I express no opinion on the question whether Lambert could "stack" had he been a "person insured thereunder." As I view it, this Court has not yet decided that particular coverage question under a fleet policy, and I do not think we ever reach it here. Since the majority does state that Judge Lynne's unreported case of Witcher v. Travelers Indemnity Co. of North America, Civil Action No. 73L1023 (U.S. Dist.Ct.N.D., Ala., Sept. 7, 1974) considered this exact issue, I would like to point out a couple of things about the Witcher case. Judge Lynne there said:
"THE COURT: The Court concludes as a matter of law that the Plaintiff is not entitled to `stack' the uninsured *266 motorist coverage under the commercial insurance policy attached as Exhibit A to the stipulation. No case decided by the Supreme Court of Alabama which has been cited to the Court or which the Court found in its own research has addressed this particular issue. It is the opinion of this Court that Alabama would follow Cunningham versus Insurance Company of North America [213 Va. 72], 189 Southeastern 2nd 832 (Supreme Court for Virginia, 1972). In the Alabama cases of Safeco Insurance Company of American versus Jones, 286 Ala. 606, 253 Southern 2nd 736 (1970); Phoenix Insurance Company versus Stuart, 289 Alabama 657, 270 Southern 2nd 792 (1972); Employers Liability Assurance Corporation, Limited versus Jackson, 289 Alabama 673, 270 Southern 2nd 806 (1972); Great Central Insurance Company versus Edge, [292] Alabama [613], [298] Southern 2nd [607], BR1572 (August 8, 1974), the Court was dealing with the right of a named insured to `stack' uninsured motorist coverages. Neither of them considered the right to `stack' uninsured motorist coverages under an employer's commercial `fleet' policy, the question addressed by the Supreme Court of Virginia in Cunningham. It is noteworthy that both the Supreme Court of Virginia in Cunningham and the Supreme Court of Alabama in Safeco relied upon the rationale of Sturdy versus Allied Mutual Insurance Company [203 Kan. 783], 457 Pacific 2nd 34 (Kansas, 1969).
"This Court concludes that the Supreme Court of Alabama would follow Cunningham and limit plaintiff's recovery to the sum of $10,000."
It is apparent that Judge Lynne referred only to the right of the "named insured" to stack, in the Witcher case. I cannot tell from the information supplied this Court by the appellee whether Witcher was a "person insured thereunder" under the primary liability provision of the fleet policy there involved. I do not have a copy of that policy. In any event, when "stacking" is an issue, whether a person is a "person insured thereunder" under the liability policynamed insured or otherwiseI believe that State Farm Automobile Ins. Co. v. Reaves, 292 Ala. 218, 292 So.2d 95 (1974), addressed that issue. Having said this, I will await the case, should it arrive, where an individual is a "person insured thereunder" under the primary liability policy containing fleet coverage.
JONES, Justice (concurring specially):
I agree that the trial Court correctly granted summary judgment denying "stacking" in this case, and I concur with Part II of the opinion. Whether "stacking" is permitted is essentially a question of coverage under the primary liability provisions of the policy.
The Uninsured Motorist Statute (Tit. 36, § 74(62a), Code), an analysis of which is crucial to a determination of this issue, provides:
"No automobile liability . . . policy insuring against loss resulting from liability imposed by law . . . shall be delivered . . . in this state. . . unless coverage is provided therein . . . for the protection of persons insured thereunder . . .."
The term "persons insured thereunder" refers specifically to those persons insured "against loss resulting from liability" under the "automobile liability policy." If Lambert is an insurednamed or otherwise under the primary liability provisions, the statute mandates coverage for uninsured motorist protection to the same extent and in the same manner as all other insureds under the basic liability coverage. See State Farm Automobile Insurance Co. v. Reaves, 292 Ala. 218, 292 So.2d 95 (1974).
If, on the other hand, he is an insured for uninsured motorist purposes purely by virtue of the omnibus clause of the uninsured motorist provisions, which coverage is not required by the uninsured motorist *267 statute in the first instance, then the extent of coverage for uninsured motorist protection can be limited by the terms of the contract.
In other words, if, under the facts before us, Lambert fits the definition of an insured as a person "insured thereunder," that is, the liability provisions of the policy, he is entitled to "stacking." General Mutual Insurance Company v. Gilmore, 294 Ala. 546, 319 So.2d 675 (1975). But, if he must resort to the omnibus clause of the uninsured motorist provisions to come within the definition of "insured," the limits of $10,000 per person provided for such coverage is effective and "stacking" will be denied. Where the insurer elects to broaden the definition of "insured" in the uninsured motorist coverage to include persons not embraced in the term "insured" in the primary coverage, it likewise can elect to limit its liability to such additional insureds. The limitation of $10,000 per person does not run the risk of being in derogation of the statute because it applies to coverage not mandated by the statute. State Farm Mutual Automobile Insurance Company v. De La Cruz, 283 Ala. 167, 214 So.2d 909 (1968).
The facts, as stipulated by the parties, show that Lambert is an insured by virtue of his occupancy of the vehicle, which is not within the definition of an omnibus insured under the primary liability provisions of the policy, but he is within the definition of omnibus insured under the uninsured motorist provisions. Therefore, Lambert is not entitled to recover under the terms of this policy in excess of $10,000.
On Rehearing
APPLICATION FOR REHEARING OVERRULED.
HEFLIN, C.J., and MERRILL, MADDOX, FAULKNER, ALMON, SHORES and EMBRY, JJ., concur.
JONES, J., concurs specially.
JONES, Justice (concurring specially):
I concur in the overruling of the application for rehearing. In view of the earnest insistence of appellant's counsel that the plaintiff was an employee of the named insured, Seaboard, and that an employee is an insured under the express terms of the primary liability coverage, I feel that a brief extension of the opinion is in order.
First, there is no evidence in the record that Lambert, at the time of the injury in question, was an employee of Seaboard. To be sure, the record does contain a Request for Admission which asks the defendant to admit that Lambert was an employee of Seaboard. There was no denial or answer to this request; therefore, the fact of Lambert's employee/employer relationship with Seaboard is admitted under Rule 36, ARCP, which provides:
" . . . the matter is admitted unless, within 30 days . . ., the party to whom the request is directed serves upon the party requesting the admission a written answer or objection . . ."
The record, however, fails to disclose that this fact was ever introduced into evidence or in any manner called to the trial Court's attention, nor was it included in the stipulation of facts presented by the parties to the trial Court.
Second, even assuming the employee/employer relationship, we find the legal requisites for stacking fail because Lambert is not an insured under the primary liability coverage according to the insuring provisions. The only reference to "employee" under the section "Persons Insured" is in subsection (c)(2) which reads:
"(c) any other person while using an owned automobile . . . with the permission of the named insured, provided his actual operation or (if he not operating) his other actual use thereof is within the scope of such permission, but with *268 respect to bodily injury or property damage arising out of the loading or unloading thereof, such other person shall be an insured only if he is:
(1) . . .
(2) an employee of the named insured. . . ."
This reference to "employee" as an insured is clearly tied to the phrase "while using an owned automobile with the permission of the named insured," which is further conditioned on injury or damage "arising out of the loading and unloading thereof." The mere fact that Lambert was an employee of Seaboard does not make him an insured for whom uninsured motorist protection is mandated by the Uninsured Motorist Statute. It follows, then, that Lambert's coverage for uninsured motorist protection is purely by virtue of the uninsured motorist provisions of the policy; and the express limitations of such coverage ($10,000 per person) is valid.