RENDERED:  MARCH 25, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0715-MR

CHRISTOPHER WALLACE                                          APPELLANT

v.          APPEAL FROM WARREN CIRCUIT COURT
            HONORABLE JOHN R. GRISE, JUDGE
            ACTION NO. 19-CI-01766

GRANGE INSURANCE COMPANY                                      APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  LAMBERT, MAZE, AND L. THOMPSON, JUDGES.

MAZE, JUDGE:  The single issue in this appeal is whether the Warren Circuit

Court erred in concluding that an insurance policy issued by appellee Grange

Insurance Company did not afford uninsured motorist coverage in excess of the

statutory minimum nor permit stacking of uninsured motorists coverage.  Finding

no error in the conclusion of the trial court, we affirm.

The facts are undisputed. Appellant Christopher Wallace was involved in an automobile collision with an uninsured driver. At the time of the collision, Wallace was driving his employer's vehicle which was covered under a policy of insurance with Grange Mutual. After collecting no-fault benefits pursuant to KRS[1] 304.39-010, the Kentucky Motor Vehicle Reparations Act, he sought uninsured motorist benefits under his employer's policy with Grange.

The policy in question is a commercial auto policy issued to Bluegrass Audio, with a policy liability limit of $1,000,000 per accident. The policy does not include uninsured nor underinsured motorist coverage and no premiums were charged for those coverages. Upon receipt of Wallace's claim, Grange was unable to locate a written rejection of uninsured motorist coverage. Due to the lack of proof of rejection required by the clear dictates of KRS 304.20-020, Grange determined it was obligated to provide uninsured motorist benefits up to the statutory minimum set out in KRS 304.39-110, $25,000 per person/$50,000 per accident. However, Wallace insisted that in the absence of proof of a signed rejection of uninsured motorist benefits, Grange was required to provide uninsured motorist benefits up to the $1,000,000 liability coverage limit. Wallace also contended that because the policy insured two vehicles, the uninsured motorist coverage should stack resulting in $2,000,000 uninsured motorist coverage.

---

[1] Kentucky Revised Statute.

Wallace thereafter instituted this action against Grange seeking uninsured motorist coverage for damages up to the liability limits of the policy covering the vehicle he was driving at the time of the collision and again maintained that because the policy covered two vehicles, the coverage must stack, doubling the amount of that coverage. This appeal stems from the entry of a partial summary judgment concluding that Grange's liability was limited to the $25,000/$50,000 statutory minimum set out in KRS 304.39-110.

Because there are no disputed issues of fact in this appeal, the question before us is whether "the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996). In the absence of factual disputes, we need not defer to the trial court's decisions as to questions of law and therefore review them *de novo*. *Philadelphia Indemnity Insurance Company, Inc. v. Tryon*, 502 S.W.3d 585, 588 (Ky. 2016).

As he did before the trial court, Wallace relies upon the decision of the Kentucky Supreme Court in *Simon v. Continental Insurance Company*, 724 S.W.2d 210, 212 (Ky. 1986), as requiring Grange to provide uninsured motorist benefits to the extent of its $1,000,000 policy limits. In rejecting Wallace's interpretation of *Simon*, the trial court distinguished the statutory requirements underpinning the *underinsured* motorists benefits at issue in *Simon* from the *uninsured* motorist benefits at issue in this case:

> Even if UIM [underinsured motorist] coverage is coextensive with liability coverage, it does not necessarily follow that UM [uninsured motorist] coverage is coextensive with liability coverage. Insurers are required to offer UIM coverage, but they are not required to provide it. KRS 304.39-320. On the other hand, insurers are required to provide UM coverage. Since UM coverage is mandatory and the statute provides a minimum amount of coverage, UM coverage should not be coextensive unless the policy states otherwise.

This view of the distinction between uninsured motorist coverage and underinsured motorist coverage finds support in the opinion of Sixth Circuit Court of Appeals in *Roy v. State Farm Mutual Automobile Insurance Company*:

> Every Kentucky policyholder obtains the relatively modest uninsured/underinsured coverage described in Ky. Rev. Stat. 304.20-020 unless he opts out of such coverage by rejecting it in writing. To obtain the potentially more extensive underinsured motorist coverage described in Ky. Rev. Stat. 304.39-320, by contrast, the policyholder must opt in to the coverage. Under 304.39-320, the insurer is required only to "make [such coverage] available *upon request*." (Emphasis supplied.)

954 F.2d 392, 397 (6th Cir. 1992).

Returning to the *Simon* analysis, the Supreme Court emphasized that the insured had requested and paid for underinsured coverage but the amount of coverage requested and paid for could not be determined from the declarations page of the policy:

> KRS 304.39-320, which is part of the Motor Vehicle Reparations Act, requires that "Every insurer shall make

-4-

available upon request to its insureds underinsured motorist coverage . . . ." It is conceded that the insured requested for and *paid for* such coverage, but the evidence does not show the amount of underinsured motorist coverage that was asked for and paid for, and we cannot determine this by looking at the Declaration pages in the policy.

724 S.W.2d at 211 (emphasis added). The Supreme Court then discussed the

policy's failure to designate the amount of underinsurance payable in light of the

doctrine of reasonable expectations:

When considered from the standpoint of:

(a) a face sheet that provides limits for uninsured motorist coverage but omits limits for underinsured motorist coverage;

(b) a section in the policy on uninsured motorist insurance which mentions "underinsured" but only in limited and confusing terminology; and

(c) the reasonable expectations of an insured which would accompany the purchase of underinsured motorist coverage absent "an unequivocally conspicuous, plain and clear manifestation of the company's intent to exclude coverage" (*Long*, *supra*) [sic]; *this policy must be viewed as ambiguous and the coverage unlimited except to the extent that the insured knows he has purchased automobile liability insurance limited to $100,000. The insured had the right to expect that he had underinsured motorist coverage to the extent of $100,000, less the offset from the tortfeasor's liability coverage.*

*Id*. at 213 (emphases added). Stated differently, "the proper area of inquiry is what

the [insureds] could reasonably expect in light of *what they actually paid for . . . .*"

*Estate of Swartz v. Metropolitan Property & Casualty Co.*, 949 S.W.2d 72, 76 (Ky. App. 1997) (emphasis added).

` In contrast to the situation in *Simon*, there was no purchase of uninsured coverage in this case and thus no reasonable expectation that the coverage provided under the Grange policy would exceed the statutory minimums. Unlike *Simon*, we perceive no patent ambiguity in the policy, merely the absence of the written rejection required by KRS 304.20-020. Accordingly, having paid no premium for uninsured motorist insurance, we are convinced that the insured had no reasonable expectation of receiving coverage in excess of the statutory minimum.

Next, appellant argues to that he is entitled to stack the uninsured motorist coverage on the two vehicles covered by the policy. We do not agree for two reasons.

First, the Supreme Court of Kentucky clarified in *Ohio Casualty Insurance Company v. Stanfield*, 581 S.W.2d 555 (Ky. 1979), that an employee is precluded from stacking the coverages in his employer's policy. *Stanfield* involved a single policy covering a fleet of vehicles owned by the City of Newport. Stanfield, an injured employee of the named insured City of Newport sought to "stack" or pyramid the uninsured motorist coverages on all 63 vehicles on which his employer had procured insurance. In concluding that stacking was not

permissible, the Supreme Court differentiated between two classes of insureds under a policy: 1) insureds of the first class, who are named insureds who had bought and paid for the extra protection by not rejecting uninsured motorist coverage for each vehicle on the policy; and 2) permissive users, like Stanfield, who were entitled to more limited protection:

> We therefore hold that Stanfield is confined to the limits of the Ohio Casualty policy applicable to the vehicle he was using. He is as to his employer's policy an insured of the second class. He is precluded from stacking the coverages in his employer's policy.

*Id*. at 559. In reaching this result, the *Stanfield* Court cited approvingly the rationale expressed by the Supreme Court of Alabama in *Lambert v. Liberty Mutual Insurance Co*., 331 So.2d 260, 265 (Ala. 1976):

> Can it be seriously contended that Seaboard [the employer] expected that the $4.00 premium it paid for uninsured motorist coverage on each of its 1,699 vehicles would purchase coverage for all permissive occupants of its vehicles to the tune of $16,900,000? Clearly, such an expectation would not have been a reasonable one under the terms of the commercial fleet policy here in question. The status of Lambert (for purposes of uninsured motorist coverage) as an insured solely by virtue of his occupancy of the vehicle, is clearly distinguishable from the status of a named insured who is entitled to stack coverages by virtue of his personal payment of an additional premium for each vehicle insured under a multi-vehicle policy.

The second reason stacking is not available in this case stems from precedent set out in the decision of this Court in *Adkins v. Kentucky National*

-7-

*Insurance Company*, 220 S.W.3d 296 (Ky. App. 2007), holding that uninsured motorist coverage may not be stacked where a single uninsured motorist premium is charged for multiple vehicles and where the single premium charged is actuarial, not based on the number of vehicles covered. In this case, uninsured motorist coverage is available only by operation of statute due to Grange's inability to provide proof of rejection of that coverage. Thus, the named insured did not pay any premium, let alone separate premiums, for the two covered vehicles. Wallace therefore had no reasonable expectation that uninsured motorist coverage on his employer's two vehicles would stack.

Accordingly, finding no error in the decision of the Warren Circuit Court on either issue presented, we affirm its entry of partial summary judgment both as to the extent of uninsured coverage available and the right to stack that coverage.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Dion Moorman
Owensboro, Kentucky

BRIEF FOR APPELLEE:

Melissa Thompson Richardson
Elizabeth M. Bass
Lexington, Kentucky